2025 IL App (4th) 241619-U

NO. 4-24-1619

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

FILED
October 15, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Cass County |
| KEVIN L. OWNBEY, | ) | No. 19CF91 |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | Honorable |
| | ) | Timothy J. Wessel, |
| | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Justices Doherty and Grischow concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Defendant has failed to carry his burden of showing that the record rebuts the
certificate that postconviction counsel filed pursuant to Illinois Supreme Court
Rule 651(c) (eff. July 1, 2017).

¶ 2    Defendant, Kevin L. Ownbey, is serving sentences of imprisonment that the

circuit court of Cass County imposed upon him for two offenses of aggravated domestic battery

(720 ILCS 5/12-3.3(a) (West 2018)). He petitioned, *pro se*, for postconviction relief. The court

appointed postconviction counsel, who filed an amended petition. The court granted a motion by

the State to dismiss the amended petition for failure to make a substantial showing of a

deprivation of a constitutional right.

¶ 3    Defendant appeals because the record, in his view, rebuts a certificate by

appointed postconviction counsel in which counsel represented he had performed the duties

required in Illinois Supreme Court Rule 651(c) (eff. July 1, 2017). The State agrees with

defendant that the record rebuts the certificate. In our *de novo* review, however, we are unconvinced that the record does so. Therefore, we affirm the circuit court's judgment.

¶ 4                                    I. BACKGROUND

¶ 5           Initially, in this postconviction proceeding, counsel filed a certificate pursuant to a different rule, Illinois Supreme Court Rule 604(d) (eff. Oct. 19, 2023). Because Rule 604(d) applied to guilty-plea cases and defendant, instead of pleading guilty, had been found guilty at trial, the Rule 604(d) certificate was inapposite. Therefore, in defendant's previous appeal from the dismissal of his amended petition, we issued a summary order reversing the circuit court's judgment and remanding the case for compliance with the rule that applied to postconviction proceedings, Illinois Supreme Court Rule 651(c) (eff. July 1, 2017).

¶ 6           On remand, counsel filed a certificate pursuant to Rule 651(c), in which he represented as follows:

> "1. I have consulted with the Defendant in person, by mail, by phone or by electronic means to ascertain his contentions of deprivation of constitutional rights;
>
> 2. I have examined the trial court file and report of proceedings and the report of proceedings in the sentencing hearing; and
>
> 3. I have made any amendments to the motion necessary for the adequate presentation of any defects in those proceedings."

¶ 7           At a hearing on remand, after counsel filed the Rule 651(c) certificate, defendant disputed that counsel had "consulted with" him as counsel had represented in paragraph 1 of the certificate. Defendant stated, "[T]his is the first time I've seen or talked to this man, and he hasn't said a word to me yet." "You can ask him, ask him, please ask him, please," defendant

urged the circuit court. The court responded, "[T]he Court is not in a position to sit here and question the attorneys. He filed a document under oath stating he complied." "He's lying," defendant insisted. "I'm telling you he's lying." The court replied, "And that is for the Appellate Court. I'm not the Appellate Court. I'm the Circuit Court. I've lost jurisdiction. This has to go back to the Appellate Court; and if they agree with you, then you are going to be right back in front of me."

¶ 8  This appeal followed.

¶ 9        II. ANALYSIS

¶ 10    A. Shaping Defendant's Claims into Proper Legal Form

¶ 11  In the amended petition for postconviction relief, counsel raised two claims.

¶ 12  The first claim was that defendant received ineffective assistance from trial counsel. According to the amended petition, the ineffective assistance consisted of three failures by trial counsel:

> "(1) [he] failed to consult with a toxicologist to determine the level of drugs in the victim's system and the effect on the victim; (2) [he] failed to impeach the victim of her drug use at the time she sustained her injuries; and (3) [he] failed to give a jury instruction or any objection to the State's use of Count I and Count II [(the aggravated domestic battery counts)] despite the testimony at trial depicting the counts as one act and thus one crime."

¶ 13  Second, counsel claimed, in the amended petition, that the State had failed to prove that counts I and II "were in fact separate physical acts" and, thus, "the Court abused its discretion by sentencing the Defendant consecutively on Count I and Count II."

¶ 14  In this appeal, defendant criticizes the amended petition. He points out that the

amended petition lacks an affidavit or other evidence "demonstrating what a toxicologist's opinion would have been regarding the level of drugs in the victim's system and the effect such drugs would have on the victim." Also, the sentencing claim "does not allege a substantial constitutional violation." Nor is the alleged one act, one crime violation "cognizable in a post-conviction proceeding." Defendant argues that by "abandon[ing] all of [his] *pro se* claims without explanation" and substituting for them the unsubstantiated or legally insufficient claims in the amended petition, counsel failed to fulfill his duty of ensuring that "the claims were shaped in their proper legal form."

¶ 15        In *People v. Agee*, 2023 IL 128413, ¶ 46, the supreme court held that a "postconviction counsel must provide reasonable assistance when counsel amends or when counsel adds claims to a *pro se* postconviction petition." It is true that the claims in the amended petition failed to show a substantial deprivation of a constitutional right.

¶ 16        To overcome a motion for dismissal, a postconviction petition must "mak[e] a substantial showing of a *constitutional* violation." (Emphasis added.) *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006). As defendant observes, the one-act, one-crime doctrine "is not constitutionally mandated." *People v. Artis*, 232 Ill. 2d 156, 164 (2009). Also, as defendant correctly argues, the claim that "the Court abused its discretion by sentencing the Defendant consecutively on Count I and Count II" is not a constitutional claim. See *People v. Bollinger*, 53 Ill. 2d 388, 390 (1973). Finally, we agree with defendant and the State that there was no use in characterizing the failure to call a toxicologist as ineffective assistance unless that claim were accompanied by an affidavit from a toxicologist setting forth the testimony favorable to the defense that the toxicologist would have given at trial. See 725 ILCS 5/122-2 (West 2022); *People v. Guest*, 166 Ill. 2d 381, 402 (1995).

¶ 17        Even so, a claim of ineffective assistance is a constitutional claim, and counsel managed to wrest a colorable constitutional claim out of the toxicology circumstance. According to the amended petition, "the State's witness testified that the victim had traces of methamphetamine, amphetamine, Benzoylecgonine (cocaine metabolites[)], Quetiapine (sold under the brand name Seroquel) metabolites detected in her blood and/or urine." Here was an opportunity for impeachment, which, allegedly, trial counsel passed up. The amended petition claimed he "was ineffective for *** fail[ing] to impeach the victim of her drug use at the time she sustained her injuries"—although, before the remand, at a hearing on its motion for dismissal, the State pointed out that trial counsel had "ad nauseam cross-examined [the victim] about the drugs in her system, whether she was on [il]licit drugs at the time of testifying, how the memory and her ability to recall any sort of use of substances would affect her testifying."

¶ 18        In sum, then, most of the claims in the amended petition were unmeritorious, but the amended petition raised one colorable, though perhaps factually problematic, constitutional claim. We agree that an amended petition should not contain legally or factually insupportable claims. See *People v. Malone*, 2017 IL App (3d) 140165, ¶ 10.

¶ 19        A breach of that ethical obligation, however, would not necessarily mean that postconviction counsel afforded a less than reasonable level of assistance to the defendant. See *People v. Profit*, 2012 IL App (1st) 101307, ¶ 18. It could mean, instead, that, in attempting to assist the defendant, postconviction counsel zealously went further than he or she was ethically permitted to go. From the mere fact that there were facially unmeritorious claims in the amended petition, we cannot logically conclude that there were meritorious claims that postconviction counsel unreasonably omitted.

¶ 20        It was not counsel's fault if there was little in this case to work with. Presumably,

the reason why counsel attached no affidavit from a toxicologist was that no toxicologist was willing to venture an opinion as to what extent the drugs had impaired the victim. As the supreme court remarked in *People v. Johnson*, 154 Ill. 2d 227, 241 (1993),

> "In the ordinary case, a trial court ruling upon a motion to dismiss a post-conviction petition which is not supported by affidavits or other documents may reasonably presume that post-conviction counsel made a concerted effort to obtain affidavits in support of the post-conviction claims, but was unable to do so."

¶ 21   Defendant acknowledges that remark in *Johnson*. Nevertheless, he argues: "This is not a situation where counsel was unable to obtain support for claims raised in the *pro se* petition; counsel added this claim to the amended petition himself. Had counsel determined this claim was unsupportable, he had a duty to refrain from raising it. See *People v. Greer*, 212 Ill. 2d 192, 209 (2004). Counsel's decision to advance a wholly unsupported claim was unreasonable."

¶ 22   The fallacy of that reasoning is that it conflates ethical unreasonableness under *Greer* with an unreasonable level of assistance under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2022)). The two kinds of unreasonableness are not necessarily the same. A postconviction counsel who blows past ethical norms in a zealous attempt to shore up a hopelessly weak case might be ethically unreasonable while being more than reasonable (to a fault, one might say) in the level of assistance he or she provides to the defendant.

¶ 23   Another problem with defendant's distinguishment of *Johnson* is that it clashes with the Fourth District's own application of *Johnson*. In *People v. Costic*, 2025 IL App (4th) 241041-U, ¶ 39, the *amended* petition for postconviction relief claimed that trial counsel had

- 6 -

rendered ineffective assistance by failing to (1) subpoena some eyewitnesses, including Cynthia Singleton, and (2) interview other critical witnesses, including Daryl McGhee, Shawn Joiner, and Tyrell Joiner. Postconviction counsel, however, "did not attach affidavits from Singleton, *** McGee, Shawn Joiner, and Tyrell Joiner to the amended postconviction petition." *Id.* ¶ 114. Therefore, on the authority of the supreme court's decision in *Johnson*, the Fourth District "presume[d] that postconviction counsel made efforts to obtain affidavits from [those] individuals but was unable to do so, as [the] defendant ha[d] pointed to no evidence from the record to show otherwise." *Id.* It further followed, in *Costic*, that the defendant "[could not] establish unreasonable assistance for [postconviction] counsel's failure to attach such additional affidavits." *Id.* In the present case, the same analysis applies to counsel's failure to attach to the amended postconviction petition an affidavit by a toxicologist: presumably, counsel tried, but was unable, to obtain the affidavit. Thus, defendant has not shown, from the record, that he received a less than reasonable level of assistance in that respect. See *id.*

¶ 24　　　　　Defendant also complains of unreasonableness in counsel's abandonment, "without explanation," of all the claims in his *pro se* petition. Defendant cites no authority, however, for his premise that, when abandoning claims in the *pro se* petition, postconviction counsel must give the circuit court an explanation for doing so. On appeal, it is defendant who owes an explanation. "The filing of a Rule 651(c) certificate gives rise to a rebuttable presumption that post-conviction counsel provided reasonable assistance," and "[i]t is defendant's burden to overcome this presumption by demonstrating his attorney's failure to substantially comply with the duties mandated by Rule 651(c)." *Profit*, 2012 IL App (1st) 101307, ¶ 19. In his brief, defendant does not explain why any of the abandoned claims merited inclusion in the amended petition.

¶ 25 Counsel managed to devise a new constitutional claim that was legally colorable. Otherwise, he could not spin gold out of straw. As far as we know, he did all that could be done with what he had to work with. To echo the supreme court,

> "Counsel's arguments to the circuit court were unsuccessful. However, where, as here, the record shows that under the circumstances the arguments postconviction counsel raised were the best options available, counsel cannot be said to have rendered an unreasonable level of assistance even if the arguments lacked legal merit, were not particularly compelling, and were ultimately unsuccessful." *People v. Williams*, 2025 IL 129718, ¶ 49.

Defendant does not inform us what other constitutional claims counsel should have raised. Nor does he explain how the one act, one crime and sentencing claims in the amended petition were repairable or how they could have been "shape[d] *** into the proper legal form." *People v. Addison*, 2023 IL 127119, ¶ 19. He has failed to show, then, that the amended petition was the product of less than reasonable assistance.

¶ 26 To be clear, in holding that defendant has failed to carry his burden of showing that the record rebuts the Rule 651(c) certificate (see *Profit*, 2012 IL App (1st) 101307, ¶ 19), we are not engaging in harmless-error analysis. We take defendant's point that noncompliance with Rule 651(c) requires a remand without any showing of prejudice. See *People v. Suarez*, 224 Ill. 2d 37, 51-52 (2007). Our point is that, to carry his burden in this appeal, defendant must do more than assume a critical posture. He must do more than deplore the unsatisfactory product of counsel's draftsmanship. Unsatisfactory as the amended petition is, the inherent weaknesses of defendant's underlying case might make the writing of a better petition all but impossible. To carry his burden, defendant must assume not only a critical posture but also a constructive

- 8 -

posture. He must explain how the claims in his *pro se* petition could have been shaped into proper legal form to show a substantial deprivation of a constitutional right—or, if he thinks that the claims in the amended petition were improvable, he must explain how *they* could have been shaped into proper legal form. Defendant has failed to supply this constructive explanation. Consequently, he could be perceived as expecting counsel to have provided more than reasonable assistance by spinning gold out of straw.

¶ 27                                      B. Consultation With Defendant

¶ 28            Pursuant to Rule 651(c), counsel certified that he had "consulted with the Defendant in person, by mail, by phone or by electronic means to ascertain his contentions of deprivation of constitutional rights." See Ill. S. Ct. R. 651(c) (eff. July 1, 2017). For two reasons, defendant maintains that the record rebuts that certification. First, on remand, defendant insisted to the circuit court, "[T]his is the first time I've seen or talked to this man, and he hasn't said a word to me yet." Second, on remand, counsel filed a bill for his services, and the bill said nothing about consulting with defendant. Instead, the only services listed in the bill were the drafting of the Rule 651(c) certificate, a drive to and from the courthouse, and the drafting and filing of the notice of appeal.

¶ 29            Defendant argues that, under *Suarez*, 224 Ill. 2d at 41-42, we should decide *de novo* whether the record rebuts counsel's certification that he consulted with defendant to ascertain his contentions of deprivation of constitutional rights. In our *de novo* review, we conclude that the record does not rebut that certification.

¶ 30            Granted, there is defendant's unsworn denial on remand. On the other hand, before the remand, counsel filed an "Affidavit for Attorney Fees," in which he averred that (1) on September 18, 2023, he spent half an hour in a phone call with defendant; (2) on October

- 9 -

27, 2023, he spent 45 minutes in a phone call with defendant; and (3) on November 20, 2023, he spent an hour and 10 minutes meeting with defendant and attending a hearing. It is true that, judging by the second "Affidavit for Attorney Fees," which counsel submitted on remand for his services in December 2024, counsel did not speak with defendant again. Nevertheless, the second "Affidavit for Attorney Fees" did not contradict the first "Affidavit for Attorney Fees," in which counsel averred that he spoke with defendant multiple times in 2023.

¶ 31 Defendant argues that "[n]otably absent from counsel's [first] affidavit was any mention of speaking or consulting with [defendant] about the amended petition or his claims of constitutional deprivation." It is unclear, though, what else counsel would have discussed with defendant, considering that counsel billed for services he had rendered in this postconviction case.

¶ 32 It appears, therefore, that, instead of a positive rebuttal of counsel's certification that he "consulted with the Defendant in person, by mail, by phone or by electronic means to ascertain his contentions of deprivation of constitutional rights" (see Ill. S. Ct. R. 651(c) (eff. July 1, 2017)), there is a contradiction in the record: on the one hand, defendant's unsworn denial and, on the other hand, counsel's "First Affidavit for Attorney Fees." This contradiction in the evidence is not a rebuttal. The certificate pursuant to Rule 651(c) raises a presumption of compliance unrebutted by the record. See *Profit*, 2012 IL App (1st) 101307, ¶ 19.

¶ 33 III. CONCLUSION

¶ 34 For the reasons stated, we affirm the circuit court's judgment.

¶ 35 Affirmed.